1
2
3
4
5
6
7                        **UNITED STATES DISTRICT COURT**

8                        **CENTRAL DISTRICT OF CALIFORNIA**

9

10  ANNABEL ABREO,                    )   No. EDCV 06-00771 (SS)
                                      )
11              Plaintiff,            )
                                      )   **MEMORANDUM DECISION AND ORDER**
12          v.                        )
                                      )
13  MICHAEL J. ASTRUE,                )
    Commissioner of the Social        )
14  Security Administration,          )
                                      )
15              Defendant.            )
    ─────────────────────────────────)
16

17

18       Plaintiff Annabel Abreo ("Plaintiff") brings this action seeking to

19  overturn the decision of the Commissioner of the Social Security

20  Administration (hereinafter the "Commissioner" or the "Agency")

21  terminating her Supplemental Security Income ("SSI") benefits.  This

22  matter is before the Court on the parties' Joint Stipulation ("Jt.

23  Stip.") filed on April 3, 2007.  For the reasons stated below, the

24  decision of the Commissioner is AFFIRMED.

25  \\

26  \\

27  \\

28  \\

**PROCEDURAL HISTORY**

In March 1988, the Commissioner determined that Plaintiff was disabled due to a severe mental impairment, paranoid schizophrenia. (Administrative Record ("AR") 13, 47).  On September 20, 2000, after a continuing disability review, the Commissioner found that Plaintiff continued to be disabled and that she met the medical listing 12.03, i.e., schizophrenic, paranoid, and other psychotic disorders.  (AR 25). On March 30, 2004, after a second continuing disability review, the Commissioner found that Plaintiff's health had improved and that she was no longer disabled.  (AR 96).

On July 21, 2004, Plaintiff filed an appeal for reconsideration of disability review.  (AR 90).  On August 11, 2004, a Disability Hearing Officer determined that Plaintiff was no longer disabled.  (AR 78-85). Plaintiff received a pre-hearing conference (January 14, 2005) and two hearing dates (May 11, 2005 & November 8, 2005) before Administrative Law Judge ("ALJ") John W. Belcher.  (AR 293, 305, 319).  On April 6, 2006, ALJ Belcher issued a decision finding that Plaintiff's mental health had improved and that her eligibility for SSI benefits ended effective March 1, 2004.  (AR 13-21).  The Appeals Council denied review and the ALJ's decision became the final decision of the Commissioner. (AR 3-5).  Plaintiff initiated the instant action on July 19, 2006.

**FACTUAL BACKGROUND**

Plaintiff was born on March 6, 1967, and was thirty-eight years old at the time of the hearings.  (See AR 67).  She completed high school

and "beauty" college.  (AR 311).  Plaintiff did not work in the fifteen years prior to the hearings.  (See AR 347).  At the time of her original disability finding, Plaintiff suffered from substance abuse problems. (See e.g., AR 80, (noting that in 2000, Plaintiff had a provisional diagnosis of possible psychoative substance induced psychotic disorder due to a history of drug abuse); AR 68 (Plaintiff reporting to Dr. Kikani that she was an "ex-drug addict" but is now sober); AR 332 (Plaintiff's sister reported that initial disability finding was likely related to drug use)).

**A.   Relevant Medical History**

Plaintiff's mother reported that Plaintiff did not receive any treatment for her mental impairments between 1988 and 2004.  (See AR 317).  However, during the 2000 continuing disability review, it was reported that Plaintiff saw a doctor in the Los Angeles area once between 1988 and 2000.  The doctor's name, address, and phone number could not be provided.  (AR 53).

In the course of the Commissioner's 2000 continuing disability review, Dr. Divy J. Kikani performed a psychiatric evaluation of Plaintiff.  (AR 67-71).  Dr. Kikani diagnosed Plaintiff with "psychotic disorder, not otherwise specified; rule out major depressive disorder, with psychotic features; [and] rule out psychoactive substance induced organic mood disorder versus psychoactive substance induced psychotic disorder."  (AR 69).  He stated his Secondary Diagnosis as: "history of psychoactive mixed substance abuse, including alcohol and marijuana in the past.  She is currently on diet pills."  (AR 69).  He assessed

Plaintiff to have a Global Assessment of Functioning ("GAF") score of fifty.[1]  (Id.).

Dr. Kikani determined that Plaintiff "show[ed] moderate impairment in ability to interact normally with co-workers, supervisors and public and moderate impairment in ability to attend to the usual work situation and ability to cope with routine changes at work.  [Plaintiff] may be expected to show moderate episodes of emotional deterioration at the normal work situation[.]"  (AR 70).  Dr. Kikani also found that Plaintiff should not handle her own finances.  (Id.).  Dr. Kikani recommended that Plaintiff receive psychological testing to evaluate her psychiatric symptoms. (Id.).  He also suggested that Plaintiff should be subjected to alcohol and drug testing to determine whether substance abuse continues to contribute to her psychiatric symptoms.  (Id.).

In the course of the Commissioner's 2004 continuing disability review, Dr. Kikani performed another psychiatric evaluation of Plaintiff.  (AR 187-90).  Dr. Kikani determined that Plaintiff had no Axis I diagnosis.  (AR 189).  He noted that Plaintiff denied any current

---

[1]   A Global Assessment of Functioning score is the clinician's judgment of the individual's overall level of functioning.  It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations.  See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. 2000) (hereafter, "DSM IV").

A rating of 41-50 on the GAF scale indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  See DSM IV, at 34.

substance abuse.  (AR 189-90).  He also assessed that Plaintiff had a GAF score of sixty.[2]  (AR 189).

Dr. Kikani noted that Plaintiff "[was] devoid of any prominent symptoms of psychosis, thought disorder, perceptual disturbances, prominent mood disorder."  (AR 189).  He also found that Plaintiff did not show any restriction or impairment in her daily activities or social functioning.  (AR 190).  Dr. Kikani mentioned that Plaintiff's concentration, persistence, and pace were not impaired.  (Id.).  Dr. Kikani observed that there was a "sharp contrast in psychiatric and mental status evaluation between 9/5/2000 and the evaluation date of 2/3/04[.]"  (Id.).

In January 2005, consultative examiner, Dr. Adam Cash, conducted a psychological evaluation of Plaintiff.  (AR 213-17).  Dr. Cash could not state a diagnosis for Plaintiff.  (AR 217).  He found that due to the questionable validity of her psychological tests, it was likely that Plaintiff was "at the very least exaggerat[ing] her deficits."  (Id.).

In 2004, after the disability hearing officer denied Plaintiff's request for reconsideration and found that Plaintiff was no longer disabled, Plaintiff sought psychiatric treatment.  Beginning in October 2004, Plaintiff began receiving psychiatric treatment from Dr. Maria

---

[2]  A rating of 51-60 on the GAF scale indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  See DSM IV, at 34.

Salanga at the Vista Community Counseling Center of the County of San Bernardino Department of Behavioral Health. (See AR 251). Her initial evaluation noted that Plaintiff suffered from schizophrenia, had a history of substance abuse, and had a GAF score of forty-five. (AR 249-50). Dr. Salanga prescribed ten milligrams of Abilify and ten milligrams of Paxil. (AR 239). The most recent notations from Dr. Salanga report that Plaintiff is not suffering any side effects from the medication. (AR 241). Each of Plaintiff's visit summaries notes that Plaintiff is "feeling better," "fine," or "continuing to do well." (See e.g., AR 241-42, 244-48, 280-83).

**B.    Plaintiff's Testimony**

Plaintiff testified that she sought therapy in late 2004 because she was hearing voices. (AR 329-30). However, she reports that once she began taking the prescribed medication, the voices stopped. (AR 329). Plaintiff testified that she only heard voices for three months prior to seeking treatment and that she did not hear voices while she was abusing drugs. (AR 331-32). She also reported that she no longer had a substance abuse problem. (AR 333). When Plaintiff was asked to identify the date that she last used illegal drugs, Plaintiff's answer was inaudible. (Id.). In addition, Plaintiff testified that she did not suffer from medication side effects. (AR 329). Plaintiff also stated that she believes that she "could work" and her sister reported that Plaintiff wants to work. (AR 333-34).

\\
\\
\\

6

### THE EVALUATION OF DISABILITY

## A.    The Initial Five-Step Evaluation

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[3] and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

    (1)  Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

    (2)  Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

    (3)  Does the claimant's impairment meet or equal one of a

---

[3]    Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

list of specific impairments described in 20 C.F.R. Part
404, Subpart P, Appendix 1?  If so, the claimant is found
disabled.  If not, proceed to step four.

(4)  Is the claimant capable of performing his past
work?  If so, the claimant is found not disabled.
If not, proceed to step five.

(5)  Is the claimant able to do any other work?  If not,
the claimant is found disabled.  If so, the
claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d
949, 953-54 (9th Cir. 2001) (citations omitted); 20 C.F.R. §§
404.1520(b)-(g)(1) & 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and
the Commissioner has the burden of proof at step five.  Bustamante, 262
F.3d at 953-54.  If, at step four, the claimant meets his burden of
establishing an inability to perform past work, the Commissioner must
show that the claimant can perform some other work that exists in
"significant numbers" in the national economy, taking into account the
claimant's residual functional capacity ("RFC"),[4] age, education, and
work experience.  Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at
721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  The Commissioner may
do so by the testimony of a vocational expert or by reference to the
Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart

---

[4]   Residual functional capacity is "what [one] can still do
despite [his] limitations" and represents an "assessment based upon all
of the relevant evidence."  20 C.F.R. §§ 404.1545(a), 416.945(a).

8

P, Appendix 2 (commonly known as "the Grids").  <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1162 (9th Cir. 2001).  When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. <u>Moore v. Apfel</u>, 216 F.3d 864, 869 (9th Cir. 2000).

B.   **The Seven-Step Re-Evaluation**

In determining whether to discontinue disability benefits, the Commissioner applies the following sequential evaluation.

(1)   If the claimant has an impairment or combination of impairments that meets or equals a listing, disability continues.

(2)   If the claimant does not meet or equal a listing, the ALJ will determine whether medical improvement has occurred.

(3)   If so, the ALJ will determine whether the improvement is related to ability to work (i.e., to RFC).

(4)   If no medical improvement related to a claimant's ability to work has occurred, disability continues.

(5)   If there has been medical improvement related to ability to work, the ALJ will determine whether all the current impairments, in combination are "severe," and if not, disability ends.

(6)   If the claimant meets the "severity" criteria, the ALJ will determine the current RFC, and if the claimant is able to do past work, disability ends.

(7)   If the claimant remains unable to do past work, the ALJ will

9

determine whether the claimant can do other work.  If claimant cannot do other, disability continues.

20 C.F.R. § 416.994(b)(5).  Once a claimant is found disabled, a presumption of continuing disability arises.  <u>Bellamy v. Sec'y of Health & Human Serv.</u>, 755 F.2d 1380, 1381 (9th Cir. 1985).  Disability benefits cannot be terminated unless substantial evidence demonstrates medical improvement in the claimant's impairment so that the claimant is able to engage in substantial gainful activity.  See 42 U.S.C. § 423(f); <u>Murray v. Heckler</u>, 722 F.2d 499, 500 (9th Cir. 1983).

To determine whether medical improvement has occurred, the Commissioner (or ALJ) compares the claimant's current condition with the condition at a comparison point in the past.  <u>See</u> 20 C.F.R. § 416.994(b)(1)(vii).  The comparison point date ("CPD") is the date of the most recent favorable medical determination (i.e., the date claimant was first found to be disabled).  <u>See</u> 20 C.F.R. § 416.994(b)(1)(i) & (b)(2)(i).  The ALJ must compare the claimant's condition at the CPD to claimant's present condition to determine whether there was has been improvement.  <u>Id.</u>  Whether there has been medical improvement is determined by a comparison of prior and current medical evidence which must show that there have been improvements in the symptoms, signs, and laboratory findings associated with the claimant's impairment.  <u>Id.</u>  If no medical improvement has occurred, the claimant's disability does not cease.  20 C.F.R. § 416.991(b).

If medical improvement has occurred, the ALJ must determine whether the medical improvement is related to the claimant's ability to work.

10

Id.  To do so, the ALJ must compare the claimant's current RFC with the RFC at the time of the most recent favorable decision.  20 C.F.R. § 416.994(b)(1)(vii).  If the Commissioner finds medical improvement that is related to claimant's ability to work, the next step is to determine whether the claimant's impairments may, nonetheless, preclude substantial gainful activity.  20 C.F.R. § 416.994(b)(1)(v).

## THE ALJ'S DECISION

The ALJ determined that Plaintiff was no longer eligible to receive supplemental security income benefits.  (AR 20).  The ALJ noted that Plaintiff's original mental disability finding could have been affected by Plaintiff's prior substance abuse.  (AR 17).  The ALJ then found that Plaintiff's current mental impairments did not meet any impairment described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AR 18, 20). The ALJ assessed that Plaintiff's mental health had improved since the time of the last favorable decision, September 2000.  (See AR 18).  The ALJ found that Plaintiff had the RFC to perform work in the "light" exertional capacity.  (AR 18, 20).  Although Plaintiff had no past relevant work (AR 19), the ALJ determined that Plaintiff had the RFC to preform other jobs that exist in significant numbers in the economy. (Id.).  The ALJ held that Plaintiff was no longer disabled as of March 1, 2004.  (AR 20).

\\
\\
\\
\\
\\

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21.

**DISCUSSION**

Plaintiff contends that the Commissioner's decision should be overturned for numerous reasons. First, she claims that the ALJ did not properly consider the psychiatric evaluation by Dr. Salanga. (Jt. Stip. at 3-5). Second, she asserts that the ALJ failed to appropriately consider the treating therapists' opinions of functional status. (Jt.

12

Stip. at 9-10).  Third, Plaintiff claims that the ALJ did not properly consider the 2004 evaluation by Dr. Kikani.  (Jt. Stip. at 11-12). Fourth, she asserts that the ALJ misstated the evidence in the record. (Jt. Stip. at 13-14).  Finally, Plaintiff complains that the ALJ failed to properly consider the type, dosage, effectiveness, and side effects of Plaintiff's medications.  (Jt. Stip. at 15-18).  The Court disagrees with Plaintiff's contentions and instead finds that the ALJ's decision should be affirmed.

**A.**   **Plaintiff's Claims That The ALJ Improperly Considered The Treating And Examining Psychiatrists' Opinions Do Not Warrant Remand**

Plaintiff complains that the ALJ improperly considered Dr. Salanga's November 3, 2004 psychiatric evaluation of Plaintiff.  (Jt. Stip. at 3).  Plaintiff argues that the ALJ only "peripherally refers to Dr. Salanga's reports and ongoing treatment."  (Jt. Stip. at 4).  Also, Plaintiff contends that the ALJ did not indicate whether he accepted or rejected Dr. Kikani's 2004 report.  (Jt. Stip. at 11-12).  Plaintiff asserts that these allege errors warrant remand.  The Court disagrees.

Although the treating physician's opinion is entitled to great deference, it is "not necessarily conclusive as to either the physical condition or the ultimate issue of disability."  Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999).  If the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (citing Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th

13

Cir. 1991)).  Even when the treating doctor's opinion is contradicted by the opinion of another doctor, the ALJ may properly reject the treating doctor's opinion by providing "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." <u>Id.</u> (citing <u>Murray</u>, 722 F.2d at 502).  Like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.  <u>Id.</u> at 830-31.  The ALJ can meet this burden by setting forth a detailed and thorough summary of the facts and conflicting clinical evidence.  <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989).

Where the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence.  <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995).  "It is then solely the province of the ALJ to resolve the conflict."  <u>Id.</u>  When presented with conflicting medical opinions, the ALJ must determine credibility and resolve the conflict.  <u>Batson v. Comm'r of Soc. Sec. Admin.</u>, 359 F.3d 1190, 1195 (9th Cir. 2004) (citing <u>Matney</u>).

**1.    The ALJ Properly Considered Dr. Salanga's Evaluation Of Plaintiff**

Here, the ALJ's decision contains a detailed and through summary of all of the medical evidence documented in the record.  (AR 13-15, 17-

14

18).  Moreover, the ALJ noted that Dr. Salanga diagnosed Plaintiff with paranoid schizophrenia. (AR 17).  The ALJ determined, however, that Dr. Salanga subsequently reported that Plaintiff was doing well on her medication, had no psychotic symptoms, and no medication side-effects. (AR 17; <u>see also</u> AR 241-42, 244-48, 280-83).  As such, it is not clear that the ALJ rejected Dr. Salanga's opinion.  It appears that he considered all of Dr. Salanga's findings as a whole rather than focusing on her initial evaluation of Plaintiff.

Even if the ALJ's decision could be construed as rejecting Dr. Salanga's initial evaluation, there was no error.  Dr. Salanga's initial evaluation was clearly contradicted by Dr. Kikani's February 2004 psychiatric evaluation.  Dr. Salanga found that Plaintiff had an Axis I diagnosis of paranoid schizophrenia (AR 250) while Dr. Kikani found that Plaintiff had no Axis I diagnosis.  (AR 189).  Also, Dr. Salanga assessed that Plaintiff had a GAF score of forty-five (AR 292) and Dr. Kikani assessed that Plaintiff had a GAF score of sixty.  (AR 189).  As Dr. Salanga's opinion was contradicted by an examining psychiatrist, the ALJ need only provide specific and legitimate reasons for rejecting her opinion.  <u>Lester</u>, 81 F.3d at 830 (citation omitted).

The ALJ found that Plaintiff showed improvement in her condition in a very short period of time.  (AR 17).  Dr. Salanga's records ranged from November 2004 through January 2006.  (AR 241-42, 244-48, 280-92).  Four months after beginning treatment, Dr. Salanga noted that "[Plaintiff] reports doing fine.  Depression is reduced.  No suicidal or homicidal thoughts.  No [illegible] or prominent psychotic symptoms." (AR 244).  Subsequent notations report that Plaintiff was "feeling

15

better," "fine," or "continuing to do well."   (AR 241-42, 244-48, 280-83).   The ALJ also observed that Plaintiff had not received any psychiatric or psychological treatment prior to October 2004.   (AR 17). He noted that Plaintiff testified that she heard voices only three months before seeking psychological treatment and that she had not previously heard voices.   (<u>Id.</u>).   In addition, the ALJ observed that Dr. Salanga's assessment was based on the Plaintiff's subjective complaints as opposed to the definitive testing that Dr. Cash conducted.   (AR 19). The ALJ found that Plaintiff was not "fully credible." (<u>Id.</u>).   As such, any assessment based solely on her subjective complaints would also not be reliable.   The ALJ therefore provided specific and legitimate reasons for rejecting Dr. Salanga's initial evaluation.

In sum, the ALJ's opinion does not expressly reject Dr. Salanga's initial evaluation of Plaintiff.   Moreover, to the extent that the ALJ opinion could be construed as rejecting Dr. Salanga's opinion, he provided specific and legitimate reasons for doing so.   Accordingly, Plaintiff's claim does not warrant remand.

## 2.   <u>The ALJ Properly Considered Dr. Kikani's 2004 Evaluation Of Plaintiff</u>

Plaintiff complains that the ALJ did not accept or reject Dr. Kikani's observations that Plaintiff had some difficulty relating to people in the work setting and that she required further testing.   Her claim regarding Dr. Kikani's 2004 report is meritless.

\\

\\

16

The ALJ's decision discussed Dr. Kikani's 2004 report in detail. (<u>See</u> AR 14, 17).   He included Dr. Kikani's observation that Plaintiff had difficulty relating to people in his assessment of Plaintiff's RFC. (<u>See</u> AR 18).   Moreover, the ALJ obtained another psychological evaluation from Dr. Cash in January 2005.   (AR 213-17).   Dr. Cash reviewed Dr. Kikani's 2004 report and conducted further psychological testing.   (<u>See</u> AR 214).   As such, the Court finds that the ALJ appropriately considered Dr. Kikani's 2004 report.   It is evident that the ALJ did not reject Dr. Kikani's opinion but, instead, accepted and acted on Dr. Kikani's recommendations.   Accordingly, Plaintiff's claim does not warrant remand.

**B.**   **Plaintiff's Claim That The ALJ Failed To Discuss The Treating Therapists' Opinions Does Not Warrant Remand**

Plaintiff asserts that the ALJ's failure to discuss the opinions of Soojin Kim, M.F.T., Anthony Akalemeaku, B.S., and Ruth Maloney, L.M.F.T., was a legal error.   (Jt. Stip. at 9-10).   Specifically, Plaintiff alleges that the ALJ should have considered Soojim Kim's Care Necessity Questionnaire (AR 291-92), Antony Akalemeaku's notations regarding a group therapy session (AR 243), and Ruth Maloney's "interdisciplinary notes" (AR 251).   (Jt. Stip. at 9).   Plaintiff contends that the ALJ was obligated to consider the therapists' opinions and his failure to do so requires remand.   This Court disagrees.

Because therapists are "other sources" pursuant to 20 C.F.R. section 404.1513(d), an ALJ is entitled to accord them "less weight than

17

opinions from acceptable medical sources." <u>Gomez v. Chater</u>, 74 F.3d 967, 970-71 (9th Cir. 1996).[5]

Although the ALJ did not explicitly discuss or reject each therapists' assessment, the ALJ's failure to address every single item in the administrative record does not constitute legal error. An ALJ need not expressly discuss all of the evidence presented. <u>Howard ex rel. Wolff v. Barnhart</u>, 341 F.3d 1006, 1012 (9th Cir. 2003) ("[I]n interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'") (quoting <u>Black v. Apfel</u>, 143 F.3d 383, 386 (8th Cir. 1998) and citing <u>Vincent v. Heckler</u>, 739 F.2d 1393, 1394-95 (9th Cir. 1984)). Further, an ALJ is not required to discuss evidence that is neither significant nor probative. <u>Id.</u>

Here, the therapists' opinions were largely cumulative of Dr. Salanga's assessments. Also, Soojin Kim's Care Necessity Questionnaire was not a substantive assessment that would have added to the ALJ's understanding of Plaintiff's condition. (AR 291). Anthony Akalemeaku's notes are not probative of whether Plaintiff is disabled. They make very general observations of Plaintiff's participation in group therapy and offer the opinion of a non-medical staff person on whether Plaintiff could benefit from the therapy. (<u>See</u> AR 243). As such, the therapists' opinions are neither significant nor probative. Accordingly, the Court reject's Plaintiff's contentions regarding the therapists' records.

---

[5]   The Court notes that a therapist whose work is supervised by a physician may constitute an acceptable medical source. <u>See</u> <u>Gomez</u>, 74 F.3d at 971. However, the Plaintiff reports that the therapists in question are not acceptable medical sources. (<u>See</u> Jt. Stip. at 9).

In addition, the ALJ need not accept any opinion, if that opinion is brief, conclusory, and inadequately supported by clinical findings. See Batson, 359 F.3d at 1195 (rejecting a treating physician's opinion, in part, because it was "conclusory in the form of a check list" and "lack[ed] substantive medical findings to support [the] conclusion."); Tonapetyan v. Comm'r of Soc. Sec., 242 F.3d 1144, 1149 (9th Cir. 2001) (an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole). Here, Soojin Kim's Care Necessity Questionnaire is a check-off report used to determine whether a patient is qualified for Medi-Cal benefits. (See AR 291). It does not indicate that substantial clinical findings were made or relied upon. (See id.). As such, the ALJ was not required to address the questionnaire.

Even if the ALJ erred in failing to discuss the therapists' opinions, any error was harmless. The therapists' assessments and notes were cumulative of Dr. Salanga's opinions. Soojin Kim's Care Necessity Questionnaire evaluated Plaintiff as suffering from "schizophrenia, paranoid type" and having a GAF score of forty-five. (AR 291). The ALJ made a specific reference to Dr. Salanga's diagnosis of paranoid schizophrenia and her assessment that Plaintiff's GAF score was forty-five in his discussion of the medical evidence. (AR 17). Ruth Maloney's assessment notes also conveyed the same concerns that Dr. Salanga detailed in her records. (AR 251). Moreover, Anthony Akalemeaku's group therapy notes are not probative of whether Plaintiff was disabled. (AR 243). The ALJ throughly discussed Dr. Salanga's initial assessment of Plaintiff and her subsequent notes showing marked improvement in Plaintiff's condition. (AR 17-19). As the therapists'

records and opinions were cumulative of Dr. Salanga's assessments, the ALJ essentially addressed the observations in the therapists' opinions. Even if the therapists' opinions were fully credited, a reasonable ALJ would have reached the same decision.

In sum, the ALJ did not err by failing to evaluate the therapists' opinions discussed above.  To the extent that the ALJ may have erred, the error was harmless.  Plaintiff is therefore not entitled to remand on this claim.

**C.   <u>Plaintiff's Claim That The ALJ Misstated The Evidence Of Record Does Not Warrant Remand</u>**

Plaintiff complains that the ALJ misstated the evidence when he noted that "[Plaintiff]" did not undertake medical treatment until after the January 14, 2005 hearing; so that her improvement took place after a comparatively short time. [AR 17]." (Jt. Stip. at 13-14).  Plaintiff claims that this error warrants remand because it is clear that the ALJ overlooked important medical evidence in the file between October 2004 and January 2005. (Jt. Stip. at 14).  The Court disagrees.

The ALJ erred in misstating the start date of Plaintiff's medical treatment.  (<u>See</u> AR 15).  Nonetheless, the was harmless error as the outcome would have been the same had the error not occurred.  <u>See</u> <u>Curry v. Sullivan</u>, 925 F.2d 1127, 1129 (9th Cir. 1990) (harmless error rule applies to review of administrative decisions regarding disability); <u>Booz v. Sec'y of Health and Human Servs.</u>, 734 F.2d 1378, 1380-81 (9th Cir. 1984) (same).  The ALJ was obviously aware that Plaintiff was

20

receiving medical treatment as of October 2004.  The ALJ reports that Dr. Soltz noted Dr. Salanga diagnosed Plaintiff with paranoid schizophrenia on October 12, 2004.  (AR 17).  Also, Plaintiff testified that she began hearing voices three months before she sought treatment. (AR 331).  The ALJ's decision notes that Plaintiff never heard voices before July 2004.  (AR 17).  As such, the ALJ must have been aware that her treatment began as of October 2004.

As discussed above, the ALJ obviously considered the evidence of medical treatment beginning in October 2004.  Moreover, the ALJ's point that Plaintiff's condition improved in a "comparatively short time" is not an error.  Plaintiff began treatment in October 2004.  She reported that she stopped hearing voices within three days of beginning her medication.  (AR 330).  By March 2005, merely five months after beginning treatment, Dr. Salanga had made very positive notations regarding Plaintiff's condition and improvement.  (See AR 244).  As such, the ALJ's mistake in stating the start date of Plaintiff's treatment was harmless and does not warrant remand.

**D.   Plaintiff's Claim Regarding Medication Side-Effects Does Not Warrant Remand**

Plaintiff also contends that the ALJ erred by not considering the side effects of Abilify and Paxil on Plaintiff.  (Jt. Stip. at 15-18). In support of her argument, Plaintiff cites that her dosage had recently been reduced and the medical expert testified that such a reduction "often indicates they might be having some side effects . . . ."  (Jt. Stip. at 16 (quoting AR 325)).  Plaintiff also notes that she testified

21

that she seems to be moving in "slow motion," that the medical expert mentioned that Ambilify and Paxil is "strong medicine," and that the medical expert commented that not many people become accustomed to anti-psychotics.  (Jt. Stip. at 16 (quoting AR 335-36)).  Plaintiff then lists the various side-effects that people have when taking Abilify and Paxil.  (Jt. Stip. at 17).  Plaintiff's claim is not persuasive.

The "type, dosage, effectiveness, and side effects" of any medication taken by the claimant to alleviate his or her pain or other symptoms are factors relevant to a disability determination and should be considered by the ALJ.  20 C.F.R. § 404.1529(c)(3)(iv); see also Social Security Ruling ("SSR") 96-8p, available at, 1996 WL 374184; SSR 96-7p, available at, 1996 WL 374186.  However, a claimant bears the burden of proving that an impairment, including a medication's side effects, is disabling.  Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985) (claimant failed to meet burden of proving that an impairment is disabling where he produced no clinical evidence showing that his prescription narcotic use impaired his ability to work); Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir. 2002) (upholding the ALJ's rejection of the plaintiff's statements that her medications affected her concentration and made her dizzy where no objective evidence was put forth and the ALJ properly found her testimony was generally not credible).  Plaintiff has not met her burden in this case.

The record does not contain any references to side effects caused by Plaintiff's medications.  Plaintiff's testified that she did not suffer from any side effects from the medication but that it made her "quiet."  (See AR 330).  Moreover, Plaintiff's medical records report

22

that she was not suffering from medication side effects. (AR 241-42, 244-48, 280-83). Accordingly, Plaintiff has failed to put forth clinical evidence showing Abilify or Paxil affected her ability to sustain employment. See Miller, 770 F.2d at 849. The Court concludes that the ALJ properly considered the limited evidence in the record regarding the side effects of Abilify and Paxil. Therefore, remand is not warranted.

**CONCLUSION**

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on counsel for both parties.

DATED: October 1, 2007.

/S/

_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE